## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY,
  378 N. Main Ave.
  Tucson, AZ 85702

                  *Plaintiff*,

    v.

THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
  1200 Pennsylvania Ave. NW
  Washington, DC 20460

                  *Defendant*.

Case No.: 1:17-cv-1270

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

## I.      INTRODUCTION

1.      In this action, the Center for Biological Diversity (Center) — an environmental conservation organization that works to protect native species and their habitats —challenges the failure of the United States Environmental Protection Agency (EPA) to provide public records related to its activities in revising the aquatic life water quality criteria for the heavy metal cadmium in 2015 and 2016 (FOIA Request), in violation of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *as amended*, or, alternatively, the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06.

2.      The Center filed its FOIA Request on April 5, 2016. In failing to respond in a manner that complies with FOIA, EPA directly contravenes the Act's policy of government transparency and undermines the functioning of a vital democratic society.

3.      Subject to its authority under the Clean Water Act, EPA develops water quality

COMPLAINT                                               1

criteria that reflect the latest scientific knowledge on the kind and extent of identifiable effects on health and welfare from the presence of pollutants in any body of water. In 2016, EPA finalized recommended ambient water quality criteria (AWQC) for the protection of aquatic life relating to effects of cadmium on aquatic organisms, based upon consideration of available information. Under Section 304 of the Clean Water Act, "water quality criteria" represent a non-regulatory, scientific assessment of ecological effects. The criteria presented in the 2016 AWQC document for cadmium are a scientific assessment of ecological effects.

4.      Cadmium is a toxic heavy metal that is found in mineral deposits and often used in manufacturing batteries, coatings, and electronics. Cadmium can be mined, and is also present in lead, copper, zinc, and coal mine wastes, fossil fuels, iron and steel, cement, and fertilizers. Among other methods, cadmium enters the environment through natural sources such as weathering and erosion of rocks and soil and through human-caused sources such as mining, agriculture, and waste streams from industrial processes, manufacturing, coal ash ponds, fossil fuel combustion, incineration, and municipal activities.

5.      Acute exposure to cadmium can cause increased mortality in aquatic and marine life, which can include species listed as threatened or endangered under the Endangered Species Act. Lower chronic exposure can further result in adverse effects on growth, reproduction, immune and endocrine systems, and development and behavior in these aquatic species.

6.      EPA has violated and continues to violate FOIA by failing to adequately respond to the Center's FOIA Request and by unlawfully withholding from public disclosure information sought by the Center, information to which it is entitled and for which no valid disclosure exemption applies. The Center respectfully requests for the Court to declare that EPA has violated FOIA, or, alternatively, the APA. The Center also seeks injunctive relief to compel EPA

to immediately release all requested records improperly withheld and the reasonably segregable portions of any lawfully exempt records.

## II.  JURISDICTION AND VENUE

7.       The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) (FOIA) and 28 U.S.C. § 1331 (federal question).

8.       This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court further has authority to grant injunctive relief under 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

9.       Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## III. PARTIES

10.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works to protect native species and their habitats, including from exposure to toxic chemicals and heavy metals such as cadmium. The Center has over 58,000 active members across the country, and maintains offices throughout the United States. The Center brings this action on behalf of itself and its members.

11.      The Center and its members are harmed by EPA's failure to provide the requested records in violation of FOIA, or, alternatively, the APA. For the Center to be successful in its mission to protect native species and their habitats, it is critical that it is able to maintain access and transparency to information related to the harmful health and safety effects of prominent environmental contaminants such as cadmium, as well as EPA's oversight of associated water quality degradation and ecological harm.

12.      Defendant   U.S.   ENVIRONMENTAL   PROTECTION   AGENCY   is   an

COMPLAINT                                                                                       3

independent agency of the executive branch of the U.S. government. EPA is in possession and control of the records that the Center seeks, and as such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f). EPA is the federal agency responsible for applying and implementing the federal laws and regulations at issue in this complaint.

### IV.    STATUTORY AND REGULATORY FRAMEWORK

13.      FOIA's basic purpose is to provide for transparency and accountability in the federal government. It establishes the public's right of access to all federal agency records upon request unless the agency can demonstrate that one of nine narrowly enumerated disclosure exemptions applies. 5 U.S.C. §§ 552(a), (b)(1)-(9). The scope of federal agency records that is considered public and subject to release under FOIA is broad. *Id*. § 552 (a)(2).

14.      FOIA imposes strict and rigorous deadlines on agencies to respond to requests. *Id*. § 552 (a)(6)(A). FOIA obligates an agency responding to a FOIA request to issue a determination on the request within twenty working days of receipt (the "determination deadline"), and if the agency decides to produce records in compliance with the request, to make the requested records promptly available. *Id*. §§ 552(a)(6)(A)(i), (a)(3)(A). Within twenty working days, the agency must also inform the requester that it has a right to appeal the agency's determination. *Id*. § 552(a)(6)(A)(i).

15.      FOIA provides a specified set of limited circumstances under which federal agencies may obtain more time to make the determination that is required by FOIA. *See id*. §§ 552(a)(6)(A), (B).

16.      FOIA requires that each agency make efforts to search for records in a manner that is reasonably calculated to comprehensively locate the records that are responsive to the FOIA request. *Id*. §§ 552(a)(3)(C), (D).

17.     Any inquiry under FOIA brings with it a strong presumption in favor of disclosure.

18.     In certain, limited instances, an agency may withhold records from FOIA's broad disclosure mandate. *Id.* § 552(b)(1)-(9). In light of FOIA's dominant objective of disclosure over secrecy, these exemptions must be narrowly construed.

19.     FOIA places the burden on the agency to prove that it may withhold responsive records from a requester. *Id.* § 552(a)(4)(B).

20.     Pursuant to Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5), the agency may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption is limited to privileged records and has been interpreted to include records protected by the deliberative-process privilege and attorney-client privilege. In evaluating withholdings based on Exemption 5, the privileges must be construed as narrowly as is consistent with legal requirements and efficient governmental operation.

21.     The deliberative-process privilege allows a federal agency to withhold responsive records only where the records contain material that is both "pre-decisional" and "deliberative."

22.     For a record to be "pre-decisional," it must reflect the give-and-take of a consultative process before the agency took a specific final action. Therefore, to apply an agency must be able to point to a specific agency decision to which a withheld record pertains.

23.     Even in the event the deliberative-process privilege applies, all pre-decisional records, including draft records, are not considered universally exempt from disclosure. For example, the privilege does not protect orders, decisions, interpretations, or guidelines that may have precedential weight.

24.      Further, portions of a pre-decisional record are "deliberative" only when they involve opinions or are recommendatory in nature. Factual information in a record is not "deliberative." Factual records, or the factual portions of deliberative records where segregation is feasible, therefore, may not be withheld under the deliberative-process privilege and must be disclosed to the requester.

25.      The attorney-client privilege protects confidential communications between an attorney and client relating to a legal matter for which the client has sought professional advice. To lawfully invoke the privilege, there must be an attorney-client relationship and the communication must be within the scope of seeking professional advice.

26.      Neither the deliberative-process privilege nor the attorney-client privilege may be invoked to withhold from disclosure records that were created by a third party, have been shared by the agency with a third party (thus destroying the privilege), or were prepared by independent consultants acting on behalf of their own interests, not those of the agency.

27.      In the event a FOIA exemption applies, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." *Id*. § 552(b).

28.      FOIA places the burden on the agency to provide and sustain that it may withhold responsive records from the requester. *Id*. § 552(a)(4)(B).

29.      A requester may appeal an agency's failure to disclose requested records, *id*. § 552(a)(6), and, as necessary, may thereafter petition the court for injunctive and declaratory relief from the agency's continued, improper withholdings of the requested records, *id*. § 552(a)(4)(B).

30.      Under the strict deadlines imposed on federal agencies under FOIA, after receipt

of an administrative appeal an agency must make a final determination on that appeal within twenty working days. *Id*. § 552(a)(6)(A)(ii). An agency may, in limited circumstances, extend the deadline by an additional ten working days, but only if it provides the requester with written notice of the extension that sets forth the "unusual circumstances" that justify the extension and the date by which the agency expects to make the determination. *Id*. § 552(a)(6)(B).

31.     Alternatively, an agency's response to a FOIA request and/or a FOIA appeal is subject to judicial review under the APA. The APA confers a right of judicial review on any person who is adversely affected by agency action, 5 U.S.C. § 702, and authorizes district courts to compel agency action that is unlawfully withheld or unreasonably delayed*, id.* § 706(1). District courts must set aside any agency action that is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* § 706(2)(A).

**V. FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF**

32.     The Center submitted a FOIA Request to EPA on April 5, 2016, requesting in writing all public records related to the "revised water quality criteria for cadmium, docket EPA-HQ-OW-2015-0753."

33.     On April 13, 2016, on the public interest grounds detailed in the Center's FOIA Request, EPA granted a request to waive any fees accrued by the agency in responding to this request, aside from the reproduction of publicly available records.

34.     On April 21, 2016, EPA Branch Chief Kathryn Gallagher sent a letter to the Center requesting clarification or modification of the scope of the request.

35.     On May 5, 2016, on behalf of the Center, Margaret Townsend spoke via telephone with EPA FOIA Coordinator Mike Elias to discuss the scope of the Center's FOIA Request. Following that telephone call, Ms. Townsend sent Mr. Elias an electronic mail message

summarizing the substance of the call. In that message, the Center agreed to narrow the scope of its FOIA Request to, "everything since January 2015 regarding the revision, including but not limited to all email correspondence."

36.      On June 13, 2016, Center staff Brett Hartl and Ms. Townsend engaged in a conference call with EPA staff Mike Elias, Kathryn Gallagher, and Alexis Wade. The primary objective of that call was to further clarify the scope of the request. On June 21, 2016, Mr. Elias sent the Center an electronic mail message summarizing the substance of the June 13, 2016 conference call, which included that the date range for the FOIA search should be from December 1, 2015 to April 4, 2016.

37.      On September 23, 2016, the Center sent a letter to EPA stressing the agency's ongoing violation of FOIA's unambiguous determination and extension deadlines and offering to assist EPA in timely completing the FOIA Request and producing the requested records. The letter further requested that EPA provide an estimated date of completion for a determination on the FOIA Request.

38.      On September 28, 2016, in response to the Center's letter, Mr. Elias sent an electronic mail message to the Center stating that EPA would provide a formal response "shortly," or at least within the following two weeks, and confirming that EPA was in the process of compiling the records responsive to the request.

39.      On October 11, 2016, Mr. Elias spoke with Amy Atwood at the Center and relayed to her that EPA's servers had "gone down," and that EPA would not meet its internal deadline for the interim formal records release. Mr. Elias communicated that he would later provide the Center with a new date for the release.

40.      On October 13, 2016, the Center received an interim records production and letter

from EPA. In its letter, EPA noted that it was withholding eight records under Exemption 5 of FOIA.

41.     On January 4, 2017, EPA provided the Center with a final response and production for the FOIA Request. According to EPA, it identified a total of 654 records as responsive to the FOIA Request, and released 287 of those records in full. Of the 367 remaining records, 280 (almost half) were withheld in their entirety, while 87 were released with redactions. EPA based its withholdings and redactions on Exemption 5 and Exemption 6 of FOIA.

42.     On April 3, 2017, the Center timely submitted an administrative appeal in writing to EPA regarding its final determination on the FOIA Request on the grounds that EPA's withholding of responsive records and portions of records pursuant to Exemption 5 and Exemption 6 was improper and in violation of FOIA. In relevant part, the Center appealed EPA's Exemption 5 withholdings as being unsubstantiated and improper, and for the Agency's failure to produce reasonably segregable portions of the withheld records.

43.     On April 27, 2017, citing "unusual circumstances," EPA notified the Center that it would need an additional ten working days to respond to the administrative appeal.

44.     On May 15, 2017, EPA's Office of General Counsel responded to the Center's appeal, granting the appeal in part and denying the appeal in part. EPA granted the Center's appeal to the extent that the "initial response did not sufficiently describe the basis for the material withheld in full and improperly redacted some of the documents withheld in part." EPA denied the appeal for the remaining records, which it maintained as continuing to be subject to Exemption 5 and Exemption 6 of FOIA.

45.     The granted portion of the administrative appeal was sent back to EPA's Office of

Water for corrective action. EPA was to provide its amended response to that corrective action within fifteen working days of the appeal determination. Fifteen working days from May 15, 2017 was June 6, 2017.

46.     On June 9, 2017, the Center received the first of two post-appeal record productions from EPA. The second and final post-appeal production was made available to the Center through the FOIAonline system on June 26, 2017.

47.     Following corrective action, EPA released 11 additional records with corrected redactions and 34 records previously withheld in full. In total, of the 654 records EPA identified as responsive to the FOIA Request, 321 were released in full, 87 were released with redactions under Exemptions 5 and 6, and 246 were withheld in their entirety under Exemption 5.

## VI. PLAINTIFF'S CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF: VIOLATION OF THE FREEDOM OF INFORMATION ACT

### IMPROPER WITHHOLDING OF AGENCY RECORDS PURSUANT TO 5 U.S.C. § 552(b)(5) AND FAILURE TO PROVIDE REASONABLY SEGREGABLE PORTIONS OF RECORDS THAT ARE NOT EXEMPT

48.     The allegations made in all proceeding paragraphs are realleged and incorporated by reference herein.

49.     The Center has a statutory right to have its FOIA Request processed by EPA in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

50.     As it relates to the subject matter of this FOIA Request — records related to EPA's efforts to revise the aquatic life water quality criteria for the heavy metal cadmium — EPA has previously asserted that the establishment of a national water quality criteria is non-binding and non-regulatory.

51.     EPA's process for revising the aquatic life water quality criteria for cadmium is

COMPLAINT                                                                                          10

not considered a deliberative process, and, therefore, records generated in connection with that process are not protected by Exemption 5.

52.      Moreover, any purely factual information contained in these records is not privileged under Exemption 5.

53.      By withholding records under Exemption 5 that are responsive to the FOIA Request, entirely outside of the scope of Exemption 5, and properly sought by the Center pursuant to FOIA, EPA is in violation of FOIA.

54.      Under FOIA, EPA bears a heavy burden of establishing that the claimed exemption applies to the records that it continues to withhold in part or full. *Id*. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its actions."). At present, EPA has not met that burden with regards to the records it continues to withhold under Exemption 5, and has not reasonably provided any specifically detailed explanation as to why the records withheld fall within the claimed exemption.

55.      The Center has a statutory right to any reasonably segregable, non-exempt portions of responsive records. *Id*. § 552(b). Therefore, even in the event Exemption 5 reasonably applies to any of the records EPA is currently withholding in full, EPA must still provide the Center will all reasonably segregable, non-exempt portions of those records. Failure of EPA to do so is a violation of FOIA.

56.      The Center has exhausted its administrative remedies with respect to this claim.

57.      The Center is entitled to declaratory and injunctive relief from the agency's continued, improper withholdings of the requested records.

**SECOND CLAIM FOR RELIEF: VIOLATION OF THE FREEDOM OF INFORMATION ACT**

**FAILURE TO COMPLY WITH THE PROCEDURAL REQUIREMENTS OF THE FREEDOM OF INFORMATION ACT**

58.     The allegations made in all proceeding paragraphs are realleged and incorporated by reference herein.

59.     The Center has a statutory right to have EPA process its FOIA Request in a manner that complies with FOIA.

60.     The Center's rights in this regard were violated when EPA failed to promptly and completely provide the records responsive to the FOIA Request that are public and non-exempt. 5 U.S.C. § 552(a)(3).

61.     The Center's rights were further violated when EPA failed to provide a lawful determination on the FOIA Request within the strict deadlines imposed by FOIA. *Id*. §§ 552 (a)(6)(A), (B). In this case, while EPA requested a clarification from the Center on the scope of its request, it did not allege any unusual circumstances warranting an extension for EPA to provide a determination on the FOIA Request. *See id*. § 552(a)(6)(B)(i) (FOIA allows an agency to extend the decision deadline beyond the twenty working days when it provides "written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched," but "[n]o such notice shall specify a date that would result in an extension for more than ten working days.").

62.     The Center has exhausted its administrative remedies with respect to this claim.

63.     The Center is entitled to declaratory and injunctive relief from the agency's continued, improper withholdings of the requested records.

### THIRD CLAIM FOR RELIEF: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
### *(In the Alternative to the First and Second Claims)*

### FAILURE TO COMPLY WITH THE PROCEDURAL REQUIREMENTS OF THE FREEDOM OF INFORMATION ACT CONSTITUTE AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED

64.     The allegations made in all proceeding paragraphs are realleged and incorporated by reference herein.

65.     EPA unlawfully withheld agency action and failed to comply with FOIA's mandates through its failure and refusal to: (1) issue a timely final determination on the Center's FOIA Request, and (2) promptly and completely provide all of the records responsive to the FOIA Request that are public and non-exempt, including reasonably segregable, non-exempt portions of records that may otherwise be subject to an exemption. These failures by EPA constitute agency action that is unlawfully withheld and are, therefore, actionable pursuant to the APA. 5 U.S.C. § 706(1).

66.     Alternatively, EPA unreasonably delayed agency action and failed to comply with FOIA's mandates through its failure and refusal to: (1) issue a timely final determination on the Center's FOIA Request, and (2) promptly and completely provide all of the records responsive to the FOIA Request that are public and non-exempt, including reasonably segregable, non-exempt portions of records that may otherwise be subject to an exemption. These failures by EPA constitute agency action unreasonably delayed, and are, therefore, actionable pursuant to the APA. *Id*. § 706(1).

67.     The Center has no other adequate remedy at law to redress the violations in this claim, and is entitled to judicial review under the APA. *Id*. § 702.

68.     The Center is entitled to declaratory and injunctive relief from the agency's

continued, improper withholdings of the requested records.

### *FOURTH CLAIM FOR RELIEF: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT*
#### *(In the Alternative to the First and Second Claims)*

### *FAILURE TO COMPLY WITH THE PROCEDURAL REQUIREMENTS OF THE FREEDOM OF INFORMATION ACT ARE ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH LAW*

69.      The allegations made in all proceeding paragraphs are realleged and incorporated by reference herein.

70.      The Center has a statutory right to have EPA process its FOIA Request in a manner that is not arbitrary, capricious, an abuse of discretion, and is otherwise in accordance with the law. 5 U.S.C. § 706(2)(A).

71.      EPA repeatedly violated FOIA's statutory mandates in responding to the FOIA Request by failing to: (1) issue a timely final determination on the Center's FOIA Request, and (2) promptly and completely provide all of the records responsive to the FOIA Request that are public and non-exempt, including reasonably segregable, non-exempt portions of records that may otherwise be subject to an exemption. EPA's actions in repeatedly violating FOIA's statutory mandate in responding to the Center's FOIA Request are arbitrary, capricious, an abuse of discretion, or not in accordance with the law and are, therefore, actionable pursuant to the APA. *Id*. § 706(2)(A).

72.      The Center has no other adequate remedy at law to redress the violations in this claim, and is entitled to judicial review under the APA. *Id*. § 702.

73.      The Center is entitled to declaratory and injunctive relief from the agency's continued, improper withholdings of the requested records.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1.      Declare as unlawful EPA's withholding of requested information under Exemption 5 of FOIA;

2.      Declare as unlawful EPA's failure to reasonably segregate out and produce non-exempt portions of responsive records otherwise exempt;

3.      Declare as unlawful EPA's failure to make timely determinations on the Center's FOIA Request;

4.      Order EPA to promptly provide the Center with all of the records sought in this action which are not subject to any FOIA exemption, including any reasonably segregable portions of records which are non-exempt;

5.      Exercise close supervision over EPA as it processes the Center's request;

6.      Award the Center its reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

7.      Grant any such further relief as the Court may deem just and proper.

Dated this 28th day of June, 2017.      Respectfully submitted,

/s/ *Hannah Connor*
Hannah Connor (District of Columbia Bar No. 1014143)
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
(202) 681-1676 / hconnor@biologicaldiversity.org

Emily Jeffers(CA Bar No. 274222), *Pro Hac Vice* pending
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
(510) 844-7109 / ejeffers@biologicaldiversity.org

*Counsel for Plaintiff Center for Biological Diversity*