UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 17-1270 (ABJ) ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) |
| Defendant. | ) ) ) |

# MEMORANDUM OPINION

Plaintiff, the Center for Biological Diversity, submitted a request to the U.S. Environmental Protection Agency ("EPA") under the Freedom of Information Act, 5 U.S.C. § 552, seeking records related the agency's revisions to the aquatic life water quality criteria for the heavy metal cadmium in 2015 and 2016. Compl. [Dkt. # 1] ¶ 1. Thereafter, plaintiff filed this lawsuit, arguing, among other things, that the agency unlawfully withheld certain records under FOIA Exemption 5, and failed to reasonably segregate and produce non-exempt information. *Id.* ¶¶ 48–73. The agency moved for summary judgment, and plaintiff opposed the motion and filed its own motion for summary judgment. For the reasons that follow, the Court will grant EPA's motion for summary judgment and it will deny plaintiff's cross-motion.

## BACKGROUND

The Clean Water Act and Cadmium Report

Section 304(a)(1) of the Clean Water Act, 33 U.S.C. § 1314(a)(1), directs the EPA to "develop and publish water quality criteria that reflect the latest scientific knowledge" on the effects of pollutants in bodies of water. Decl. of Kathryn Gallagher [Dkt. # 15-2] ("Gallagher

Decl.") ¶ 4.  EPA publishes the numeric concentration of pollutants that will protect against unacceptable adverse ecological effects to aquatic life, as well as "specific recommendations on the duration and frequency of any exceedance of those numeric concentrations that would remain protective."  *Id.*  Under Section 304(a)(1), the EPA's water quality criteria serve as non-binding recommendations to states and tribes that are responsible for adopting standards to protect the bodies of water under their jurisdiction.  *Id.*

On December 1, 2015, EPA announced the release of a draft report revising the aquatic life water quality criteria for cadmium "to reflect the latest scientific information, and current EPA policies and methods."  80 Fed. Reg. 75097 (Dec. 1, 2015).  The notice in the Federal Register marked the beginning of a public comment period for "scientific views on the draft."  *Id.*  According to EPA, cadmium is "a relatively rare, naturally occurring metal" which is known for its industrial uses in the "manufacturing of batteries, pigments, plastic stabilizers, and metal coatings, alloys and electronics."  *Id.* at 75098.  "Chronic exposure [to cadmium] leads to adverse effects on growth, reproduction, immune and endocrine systems, development and behavior in aquatic organisms."  *Id.*

Plaintiff submitted a public comment urging the agency to consult with the U.S. Fish and Wildlife Service (FWS) and National Marine Fisheries Service (NMFS) prior to taking any action.  Ex. A to Decl. of Brett Hartl [Dkt. # 16-5] at 1–2.  EPA reviewed and responded to public comments, including plaintiff's, prior to releasing the final report.[1]  Gallagher Decl. ¶ 7.  The agency declined to follow plaintiff's recommendation of coordinating with FWS and NMFS.  EPA

---

1    EPA Response to Public Comments on the Draft Aquatic Life Ambient Water Quality Criteria Cadmium - 2015, EPA, https://www.epa.gov/sites/production/files/2016-03/documents/epa-response-cadmium-draft-public-comments.pdf ("EPA Response").

Response at 17. The draft report also underwent an internal EPA review and external peer review process. Gallagher Decl. ¶ 7

On April 4, 2016, EPA announced the publication of the final report titled Aquatic Life Ambient Water Quality Criteria Cadmium – 2016 ("Final Cadmium Report"). 81 Fed. Reg. 19176 (Apr. 4, 2016).[2] This marked the culmination of the agency's internal and external peer review process. Gallagher Decl. ¶ 7. In the final report, EPA explained that it revised the cadmium water quality criteria based on "data that have become available since 2001." Final Cadmium Report at xii. The 700-page report, including references, provides a detailed analysis of the scientific models applied, the effects of cadmium on specific aquatic organisms, the national criteria for cadmium, and an appendix of the unused data with an explanation for why certain data was excluded. *See generally* Final Cadmium Report.

The FOIA Request

On April 5, 2016, plaintiff submitted a FOIA request to the EPA seeking "all records relating to the revised water quality criteria for cadmium, docket EPA-HQ-OW-2015-0753." Gallagher Decl. ¶ 2. On January 4, 2017, the agency issued its "Final Release" letter informing plaintiff that it had identified 654 responsive documents, of which 280 were withheld in their entirety, 87 were released with redactions, and 287 were released in full. Attach. I to Gallagher Decl. [Dkt. # 15-2]. The agency withheld some of the information pursuant to FOIA Exemption 5. *Id.*; Gallagher Decl. ¶ 20.

Plaintiff filed a timely administrative appeal, and the agency subsequently released more records and revised some of its redactions. Decl. of Brett Hartl [Dkt. # 16-4] ("Hartl Decl.") ¶ 17;

---

2   The final report is available here: https://www.epa.gov/sites/production/files/2016-03/documents/cadmium-final-report-2016.pdf ("Final Cadmium Report").

3

Gallagher Decl. ¶ 11. After plaintiff filed this suit on June 28, 2017, the agency released additional records, and on December 18, 2017, defendant supplied plaintiff with a *Vaughn* Index of its withholdings and redactions. Gallagher Decl. ¶ 15.

The parties met and conferred, and they agree that there are 67 records that remain in dispute in this matter. Gallagher Decl. ¶ 19; Pl.'s Statement of Material Facts As To Which There Is No Genuine Issue [Dkt. # 16-2] ("Pl.'s SOF") ¶ 26. Of the 67 records that remain in dispute, 34 have been withheld in full and 33 in part pursuant to the deliberative process privilege of FOIA Exemption 5, 5 U.S.C. § 552(b)(5). *See* Ex. C to Gallagher Decl. [Dkt. # 15-2] ("*Vaughn* Index").

On March 16, 2018, defendant moved for summary judgment, Def.'s Mot. for Summ. J. [Dkt. # 15]; Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J. [Dkt. # 15] ("Def.'s Mem."), and plaintiff opposed that motion and cross-moved for summary judgment on April 16, 2018. Pl.'s Cross-Mot. for Summ. J. & Opp. to Def.'s Mot. [Dkt. # 16] ("Pl.'s Cross-Mot"). After the motions were fully briefed, the Court ordered defendant to submit unredacted versions of a portion of the withheld records for *in camera* inspection to assist the Court in making a responsible *de novo* determination of the agency's withholdings. Min. Order (Feb. 12, 2019); Notice of Delivery of Docs. For *In Camera* Inspection [Dkt. # 27].

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

To prevail in a FOIA action, the agency must establish that the asserted exemption justifies the redactions and withholdings. 5 U.S.C. § 552(a)(4)(B). To satisfy that burden, the agency

4

"must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,* 566 F.2d 242, 251 (D.C. Cir. 1977). "To enable the Court to determine whether documents were properly withheld," the agency must submit a "Vaughn Index and/or accompanying affidavits or declarations" that specifically explains why certain documents were redacted or withheld. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009); *see also Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C. Cir. 1973); *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 145–46 (D.C. Cir. 2006).

In a FOIA action, the Court may award summary judgment solely on the information provided in affidavits or declarations that describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

**I. The information was properly withheld under FOIA Exemption 5.**

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."

5 U.S.C. § 552(b)(5).[3] A document may be properly withheld under Exemption 5 only if: (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The exemption encompasses the deliberative process privilege, which "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *Id.* at 2, citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). Its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8–9 (citations omitted), quoting *Sears*, 421 U.S. at 151.

A.  **Agency communications with an outside consultant qualify as "intra-agency" communications.**

The EPA's declarant avers that the material withheld includes emails and attachments sent between "staff at EPA, the National Oceanic and Atmospheric Administration, the United States Geological Survey, and Great Lakes Environmental Center ("GLEC"), an EPA contractor." Gallagher Decl. ¶ 20. Plaintiff argues that the communications with the outside consultant, GLEC, "do not satisfy the threshold requirement for Exemption 5 that the records be intra- or inter-agency records." Pl.'s Cross-Mot. at 20–21.

Under the "consultant corollary" to Exemption 5, "agency records authored by non-agency entities" can be protected "if those records were solicited by a U.S. agency in the course of its deliberative process." *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary &*

---

3  Although EPA withheld information pursuant to FOIA Exemption 5's attorney-client privilege and Exemption 6, plaintiff is not challenging those withholdings. Gallagher Decl. ¶ 19 n.5. Plaintiff is also not challenging the adequacy of the agency's search. *Id.* ¶ 11; Def.'s Mem. at 5.

6

*Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 201 (D.C. Cir. 2014), citing *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011). However, the doctrine is confined "to situations where an outside consultant did not have its own interests in mind." *Id*. at 201–02. To fall within the consultant corollary, defendant must establish that GLEC did not represent its own interests "or the interest of any other client" when it advised the EPA. *McKinley*, 647 F.3d at 336.

Plaintiff acknowledges that the "consultant corollary" to Exemption 5 protects communications with outside consultants under some circumstances, but it contends that the exception is inapplicable here because EPA has not established that GLEC's "only obligations are to truth and its sense of what good judgment calls for." Pl.'s Cross-Mot. at 21, quoting *Klamath*, 532 U.S. at 11. Plaintiff insists that "even a cursory glance at [GLEC's] website makes clear that the organization represents the interests of the regulated community," *id.*, and it quotes the company's website which states that it provides services that "help power generation and industrial forms attain [Clean Water Act] regulatory compliance." *Id.* at 21 n.3, quoting www.glec.com (last viewed April 9, 2018).

In its reply, defendant argues that GLEC "d[id] not represent or advocate for any outside interests" when it performed work to assist the EPA in its development of the Final Cadmium Report. Def.'s Reply in Supp. of its Mot. for Summ. J & Opp. to Pl.'s Cross-Mot. [Dkt. # 20] ("Def.'s Reply") at 11. It proffers the sworn declaration of GLEC's Contracting Officer, Courtney Stallworth. Decl. of Courtney Stallworth [Dkt. # 20-1] ("Stallworth Decl."). In it, Stallworth avers that the "contract between EPA and GLEC require[d] that GLEC submit a conflict of interest certification," and that the company "notify EPA in writing if any actual or potential conflicts of interest exist or develop during the course of its work with EPA." *Id.* ¶¶ 4–5. Stallworth asserts

7

that GLEC submitted the conflict of interest certification, and that "GLEC has notified EPA of no actual or potential personal or organizational conflicts of interest related to the Water Quality Criteria for Cadmium." *Id.* ¶¶ 6–7.

Based on that sworn declaration, the Court is satisfied that EPA has met its burden of establishing that its outside consultant did not have interests of its own, or of its other clients, when it advised the agency on the Final Cadmium Report. Plaintiff's argument that "EPA provides no evidence . . . that a conflict of interest certification is sufficient to meet its burden of proof required for the consultant corollary theory," Pl.'s Reply in Supp. of its Mot. for Summ. [Dkt. # 23] ("Pl.'s Cross-Reply") at 11, is both conclusory and contrary to the substance of Stallworth's declaration which expressly attests to the lack of a conflict of interest, even excerpting the binding provision of the EPA and GLEC contract. *See* Stallworth Decl. ¶ 4.[4] Because there is no indication in the record that GLEC represented its own interests, or outside interests, *during* its consulting work for EPA, and there is no evidence of bad faith, the Court finds that the agency's detailed declarations

---

4  The EPA and GLEC contract provision states:

> In the COI certification, the Contractor must certify to the best of the Contractor's knowledge and belief that all actual or potential organizational conflicts of interest have been reported to the Contracting Officer or that to the best of the Contractor's knowledge and belief, no actual or potential organizational conflicts of interest exist. In addition, the Contractor must certify that its personnel who perform work under this work assignment or relating to this work assignment have been informed of their obligation to report personal and organizational conflicts of interest to the Contractor. The certification shall also include a statement that the Contractor recognizes its continuing obligation to identify and report any actual or potential conflicts of interest arising during performance of this work assignment.

Stallworth Decl. ¶ 4

justify withholding its deliberative communications with GLEC under Exemption 5. *See Military Audit*, 656 F.2d at 738.

B.  **Defendant established that its withholdings, including some factual material, are "deliberative" under FOIA Exemption 5.**

"The deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch*, 449 F.3d at 151, citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992), quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975). And a document is deliberative if it "reflects the give-and-take of the consultative process." *Id.*, quoting *Coastal States Gas*, 617 F.2d at 866. As noted earlier, the deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *Klamath*, 532 U.S. at 2.

The EPA's declarant avers that the information withheld is both predecisional and deliberative:

> The withheld information is pre-decisional because it was prepared for the purpose of, and, in fact, contributed to, assisting EPA decision-making regarding the review, analysis, and synthesis of information relevant to the 2016 Aquatic Life Ambient Water Quality Criteria for Cadmium. The withheld information is deliberative because it reflects the personal opinions and thoughts of EPA staff working to develop the document for final, official publication, and does not reflect the information, analysis, or preliminary conclusions ultimately selected for inclusion in that document.

Gallagher Decl. ¶ 23; *see also id.* ¶ 27. EPA further asserts that "to the extent any of the withheld information contains facts, the information is inextricably intertwined with the deliberative

discussions concerning the Agency's ongoing development of its policies." *See, e.g.*, *Vaughn* Index at 23. Several of the individual *Vaughn* Index entries also assert that:

> [A]ny factual information contained in the email chain reflects the author's selection of facts from a broad range of available information to advise Agency decision-makers during the deliberative process concerning the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion concerning this issue.

*Id.* Additionally, the EPA's declarant avers that disclosure of this information would impede candid discussions within EPA concerning the scientific research and analysis authorized by the Clean Water Act, and that releasing the agency's reasons, rationales, and conclusions that were not ultimately used in the Final Cadmium Report could cause "public confusion." Gallagher Decl. ¶ 24.

Plaintiff argues that many of the disputed records include scientific data, research, and statistical figures, and that such "plain account[s] of factual information," fall outside the scope of the deliberative process privilege. Pl.'s Cross-Mot. at 15, quoting *Ctr. for Biological Diversity v. U.S. Marine Corps*, No. 00-2387, 2005 U.S. Dist. LEXIS 50151 at *4 (D.D.C. Sept. 19, 2005). To the extent plaintiff is arguing that factual information is categorically excluded from the deliberative process privilege, it is wrong.

While it is true that "factual information generally must be disclosed" while opinions are generally protected under the deliberative process privilege, *Petroleum Info.*, 976 F.2d at 1434, the D.C. Circuit has cautioned against a "mechanical[ ]" application of the fact/opinion distinction. *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). "The fact/opinion distinction . . . is not always dispositive; in some instances, 'the disclosure of even purely factual material may so expose the deliberative process within an agency' that the material is appropriately held privileged." *Petroleum Info.*, 976 F.2d at 1434, quoting *Mead Data*, 566 F.2d at 256. At bottom,

"the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material." *Mapother*, 3 F.3d at 1537.

In *Mapother*, the D.C. Circuit analyzed whether the deliberative process privilege protected factual material compiled by the Office of Special Investigations (OSI) to assist the Attorney General in deciding whether to bar a former Austrian President from entering the United States due to reports that he had engaged in war crimes as a Nazi officer. 3 F.3d at 1535–37. The FOIA requestors sought portions of a report submitted by OSI to the Attorney General as well as the historical records underlying the report. *Id.* at 1536–37. Because the "factual material was assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action," the Court held that "the Department properly withheld the product of this process." *Id.* at 1539. The Court observed that as part of the deliberative process, "[t]he [OSI] staff was to cull the relevant documents, extract pertinent facts, organize them to suit a specific purpose, and to identify the significant issues they encountered along the way." *Id.* at 1538. Because this task required "exercises of discretion and judgment calls" and was not "essentially technical," the Court held that the information was protected under Exemption 5. *Id.* at 1539, quoting *Petroleum Info.*, 976 F.2d at 1437–38.

In *Ancient Coin Collectors Guild v. United States Department of State*, the D.C. Circuit held that "the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." 641 F.3d 504, 513 (D.C. Cir. 2011). The Court found in that case that the State Department properly withheld factual summaries contained in an advisory report related to import restrictions because the factual summaries "were

culled by the Committee from the much larger universe of facts presented to it," and reflected an "exercise of judgment as to what issues are most relevant to the predecisional findings and recommendations." *Id*. In other words, the organization and presentation of the factual information was not essentially technical. Ultimately, "[t]o fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*." *Petroleum Info.*, 976 F.2d at 1435 (emphasis in original).

Based on its review of the agency's declaration, the *Vaughn* Index, and its *in camera* inspection, the Court finds that the material is deliberative and properly withheld under FOIA Exemption 5. Contrary to plaintiff's assertion that the withheld records consist of "plain account[s] of the factual information," Pl.'s Cross-Mot. at 15, the information was instead culled from a "broad range of available information," *Vaughn* Index at 23, and it "reflects the give-and-take of the consultative process." *Petroleum Info.*, 976 F.2d at 1434. For example, the withheld material described in the *Vaughn* Index on pages 15, 23, 31, 32, 36, 37, is deliberative because it contains staff "analyses and opinions" which are "related to the issue of whether to use a 1-hour or 24-hour averaging duration, which is the duration over which water samples are averaged for comparison." *See, e.g.*, *Vaughn* Index at 23. These documents also contain draft responses to public comments and work planning discussions. The limited factual information that appears in these documents is selected, organized, and presented in such a way that requires "the exercise of discretion and judgment calls," and does not amount to an "essentially technical" recitation of scientific data or other facts. *Mapother*, 3 F.3d at 1538–39.

The withheld documents covering other topics are also deliberative. For example, the document described in the *Vaughn* Index on page 27 contains staff discussions about "public comments . . . related to a specific organism, H. Azteca." *Vaughn* Index at 27. While this email

12

chain contains some factual information, it is in the context of a discussion on underlying scientific assumptions, and the factual information is inextricably intertwined with those deliberative discussions. *Id.*; *see also Vaughn* Index at 8 (same).

Plaintiff points out that under the Clean Water Act, EPA is required to use the "latest scientific knowledge" to determine the cadmium water quality criteria, and that this is a "far cry from the 'exercise[s] of discretion and judgment calls' that are typically protected by the deliberative process privilege." Pl.'s Cross-Mot. at 15–16, quoting *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 151 (D.D.C. 2017). While the ultimate decision must be grounded in science, that does not mean that there is no place in the decision-making process for discretion and judgment calls. As defendant's *Vaughn* Index and declaration demonstrate, throughout the development of the Final Cadmium Report, staff had to make decisions about how to respond to public comments, which content to include in the final report, and how to communicate the information; these decisions necessarily involved the sharing of opinions, analysis, and recommendations that did not make it into the final report.

The documents reviewed by the Court did not contain pages upon pages of technical scientific data. The facts that appeared in the documents were inextricably intertwined with the deliberative discussions and process itself. Therefore, the material was properly withheld under Exemption 5, and the Court finds that disclosure of these deliberative communications would hamper "open and frank discussion" within the agency. *Klamath*, 532 U.S. at 9.

**C.     EPA released all reasonably segregable portions of exempt documents.**

FOIA expressly requires agencies to extract "[a]ny reasonably segregable portion of a record" and provide it to the requesting party "after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "[I]t has long been a rule in this Circuit that non-exempt portions of a document

must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260. "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would effectively be disclosed." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002), citing *Mead Data*, 566 F.2d at 261.

Plaintiff again argues that "many of the records withheld in whole or in part . . . contain[ ] factual information," and that "[t]he only explanation given for why factual portions of these records were not produced is that they each contain facts that were considered in making a final decision in this scientific analysis." Pl.'s Cross-Mot. at 19. Plaintiff insists that such rationale does not support the agency's "failure to segregate out and release non-privileged information within these records." *Id.*

But as the Court explained, the fact that some information is factual does not categorically exclude the application of Exemption 5. *See Ancient Coin*, 641 F.3d at 513. Moreover, EPA's declarant averred that the agency conducted a "line-by-line review" and "released all reasonably segregable, non-exempt information to [p]laintiff." Gallagher Decl. ¶ 29. The agency also maintains that "[t]o the extent there are facts in the withheld information, those facts are an integral part of the deliberations, and the factual information contained therein is [inextricably] intertwined with the deliberative discussions contained in the documents." *Id.* The *Vaughn* Index supplied by EPA provides a document-by-document justification for each of the 67 records in dispute, describing the deliberative processes involved and justifying the agency's position that no reasonably segregable material could be released. *See, e.g.*, *Vaughn* Index at 8 ("[A]ny factual information contained in the email chain reflects the author's selection of facts from a broad range

14

of available information to advise the Agency decision-makers during the deliberative process concerning the deliberative process. . . . The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion concerning this issue."). And as the Court noted, the facts contained in the documents it reviewed *in camera* are exempt because the factual material is inextricably intertwined with deliberative discussions, *Mead Data*, 566 F.2d at 260, or it was selected and organized in a manner that reflects the deliberative process itself. *See Ancient Coin*, 641 F.3d at 513; *Mapother*, 3 F.3d at 1535-37.

Therefore, the Court is satisfied that EPA has met the FOIA requirement that all reasonably segregable materials be released after appropriately asserting an exemption.

## II. EPA's *Vaughn* Index is sufficient.

Finally, plaintiff challenges the adequacy of defendant's *Vaughn* Index. Pl.'s Cross-Mot. at 22–28. Plaintiff argues that the agency's "justifications . . . are vague, repetitive, and fail to establish that EPA has met its burden in claiming the disputed information falls within a FOIA exemption." *Id.* at 25. In support of its argument, plaintiff contends that several *Vaughn* Index entries are deficient because they do not "establish the function and significance of a record" but instead provide "conclusory recitations of the elements of the deliberative process privilege test and vague assertions of harm." *Id.* (citing the "dozens" of allegedly inadequate *Vaughn* Index entries).

As noted previously, "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data*, 566 F.2d at 251. An agency can carry that burden by submitting declarations

15

and/or a *Vaughn* Index. *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).

Contrary to plaintiff's characterization, most of defendant's *Vaughn* Index entries for the 67 records in dispute provide enough detail to enable the Court to determine whether Exemption 5 applies. For example, the description on page 27 of the *Vaughn* Index states:

> The withheld information is protected under Exemption 5's deliberative process privilege because it contains internal agency discussions reflecting staff analyses, advice, and recommendations relating to EPA's then ongoing review of public comments and evaluation of the public comment process concerning how to present data related to H. Azteca [a specific organism] in the 2016 Aquatic Life Ambient Water Quality Criteria for Cadmium.

*Vaughn* Index at 27. That description provides the "function and significance" of the record because it explains that the document was used to develop a response to public comments concerning a specific organism. Elsewhere in the entry, defendant lists the authors, recipients, their agencies, length of the document, date, and the potential harm of disclosure. *Id*. This information is enough for the government to justify its withholdings. *See also* Vaughn Index at 47 ("[D]iscussing EPA's Cadmium Criteria Document as it relates to corals" which "reflect[s] EPA and NOAA staff analyses and opinions relating to possible content for the [Final Cadmium Report]."); *id.* at 30 (describing document which "relates to additions to a salmonid study to be considered for inclusion" and reflects analysis and opinion on "what content to include" and "how to present the discussed content" in the final report); *id.* at 43 ("draft responses to public comments . . . related to the Endangered Species Act (ESA)"). And, in any event, the Court has based its opinion on an *in camera* review in addition to the *Vaughn* Index.

## CONCLUSION

Based on its review of defendant's *Vaughn* Index and declarations, along with its *in camera* inspection, the Court is satisfied that the withheld information is protected under FOIA Exemption

16

5 and that defendant provided all reasonably segregable information. Therefore, the Court will grant defendant's motion for summary judgment and it will deny plaintiff's cross-motion. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 27, 2019